UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIAN S.<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. C25-2605-SKV<br><br>ORDER AFFIRMING THE COMMISSIONER'S DECISION |

Plaintiff seeks review of the denial of his applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

**BACKGROUND**

Plaintiff was born in 1974, has a high school education, and has worked as a security officer. AR 99, 597. Plaintiff was last gainfully employed in or around 2013. *See, e.g.*, AR 543.

Plaintiff applied for benefits in July 2020, alleging disability as of July 13, 2016. *See* AR 17. His applications were denied initially, on reconsideration, and in an unfavorable ALJ

decision, and he sought review by the Appeal Council, which remanded the claim for further proceedings. *See id.*; *see also* AR 302-14, 322-24.

An ALJ held a hearing on October 17, 2024, at which Plaintiff amended his alleged disability onset date to October 26, 2018. AR 92-118. On March 17, 2025, the ALJ issued a decision finding Plaintiff not disabled. AR 17-35. The ALJ noted prior denied applications for benefits and found the presumption of continuing nondisability had been rebutted, and that Plaintiff met the insured status requirements for DIB through March 31, 2021. AR 18.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

> **Step one**: Plaintiff has not engaged in substantial gainful activity since the amended alleged onset date.
>
> **Step two**: Plaintiff has the following severe impairments: degenerative disc disease, migraine headaches, depressive disorder, anxiety disorder, and attention deficit hyperactivity disorder (ADHD).
>
> **Step three**: These impairments do not meet or equal the requirements of a listed impairment.[2]
>
> **Residual Functional Capacity (RFC)**: Plaintiff can perform light work, with additional limitations. He can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and must avoid even moderate exposure to extreme cold, vibrations, hazards, such as unprotected heights and dangerous machines, and concentrated fumes, odors, dusts, gases, and poor ventilation. He is able to understand, remember, and carry out simple, routine work; work in approximately two-hour intervals with standard work breaks; have occasional, superficial interaction with the public and co-workers; accept instructions from a supervisor; and work with normal, routine workplace changes.
>
> **Step four**: Plaintiff has no past relevant work.
>
> **Step five**: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P., App. 1.

AR 17-35.

The Appeals Council denied Plaintiff's request for review, AR 1-5, making the ALJ's decision the Commissioner's final decision. Plaintiff appealed the final decision of the Commissioner to this Court. Dkt. 1. The parties consented to proceed before the undersigned Magistrate Judge. Dkt. 2.

**LEGAL STANDARDS**

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

Substantial evidence is "more than a mere scintilla. It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## DISCUSSION

Plaintiff argues the ALJ erred in assessing his symptom testimony regarding his migraine headaches.[3] The Commissioner argues the ALJ's decision is free of harmful legal error, supported by substantial evidence, and should be affirmed.

### A. The ALJ Did Not Err in Assessing Plaintiff's Symptom Testimony

Absent evidence of malingering, an ALJ is required to provide clear and convincing reasons to discount a claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). An ALJ is not required to believe every allegation, *Ahearn v. Saul*, 988 F.3d 1111, 1116 (9th Cir. 2021), nor to analyze the claimant's testimony line by line, *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

The ALJ described Plaintiff's testimony regarding his migraine headaches as follows:

> At the hearing held in September 2023, in connection with the previous decision, the claimant testified that he experienced migraines on a daily basis and that they required him to take medication and lie down. He said that the episodes lasted 10 to 15 minutes and occurred throughout the day. The claimant testified that his medical treatment had been complicated by lack of adequate transportation. At the hearing held in October 2024, the claimant testified that migraines are the primary issue that prevent him from working. He testified that he experiences migraines all the time, on average four or five times a week, and they can last from most of the day or sometimes all day and all night. He said that after taking medicine they can be so bad that he has to lie down. The claimant testified that he has almost fallen in the shower due to dizziness related to migraines. He testified that he continues to experience migraines despite medications including Emgality. The claimant testified that since October 2018, his migraines have worsened, noting that they are uncontrollable and he never knows when they will come on. He said that he has done everything he is supposed to do, and that Botox injections have been discussed as a next step. The record contains a copy of the claimant's headache diary in which he indicated that he had migraines every few days in July and August 2024.

[3] Plaintiff's derivative allegation that these errors led to an erroneous RFC assessment need not be separately addressed.

AR 23-24 (citing AR 724-25). The ALJ concluded that, while Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical and other evidence in the record, and that his impairments were less debilitating than alleged.

Plaintiff argues the ALJ erred in failing to account for the total limiting effects of his severe migraine headaches. He asserts that the finding he "never has a headache that causes him to be off task is patently unreasonable," Dkt. 12 at 1, and that the RFC finding "*pretends* as though he *never* has a headache", Dkt. 17 at 1. The Court notes that the ALJ did not make any such finding and therefore declines to further address these assertions. The Court further, and for the reasons discussed below, concludes the ALJ provided a number of clear and convincing reasons to discount Plaintiff's testimony as to the intensity, persistence, and limiting effects of his symptoms.

1. Inconsistent Testimony/Statements:

The ALJ found Plaintiff's allegations undermined by inconsistencies in his testimony and statements. *See* AR 24-25. The ALJ stated that, at the 2024 hearing, Plaintiff at first testified he had only homeschooled his son in the last year and, when the ALJ pointed to inconsistent information, then acknowledged he had done so since 2019, which was consistent with the record. AR 24; *see also* AR 105-06 (". . . Okay, I was not doing that or when was I. I'm trying to think. Yeah, that does sound familiar. Yeah, I . . . was doing it in . . . 2019 as well."). The ALJ also found Plaintiff "downplayed" his involvement in his son's education. AR 24-25 (citing AR 470 (he is "solely responsible for his [son's] academic endeavors"); AR 873-74 (he is "at home with a child with a reported high level of need."); *see also* AR 109-10 (testifying his son

only did homeschooling "a couple times a week", with entirely on-line classes overseen by an instructor, and that his role was making sure his son was "doing what he's supposed to be doing" and help if needed, but he did not usually have to help). The ALJ found Plaintiff's testimony inconsistent with his actual level of activity and to undermine both his allegations and his testimony.

The ALJ also considered inconsistencies in statements regarding cannabis use. He noted a consultative examiner's description of Plaintiff as "mildly evasive when discussing the quantity and frequency of his cannabis use", and found his testimony of use "one- to two-times weekly" inconsistent with the record. AR 25 (quoting AR 951 (examiner observed Plaintiff "claim[ed] that he doesn't know and is not sure.")). The ALJ subsequently described Plaintiff's inconsistent statements regarding cannabis use, and found they rendered his self-reports "less reliable, particularly when considered in connection with the statements of . . . consultative examiners." AR 29-30 (citing AR 836 (June 2018 denial of substance use); AR 818 (March 2019 report of using cannabis); AR 872 (February 2021 report of using a little bit of marijuana once a week to help with migraines); AR 880 (February 2021 denial of any substance use); AR 1090 (August 2021 report of using CBD oil and smoking marijuana on occasion)); *see also supra* at 11-12 (discussing consultative examiners' observations regarding symptom exaggeration).

The ALJ, finally, considered Plaintiff's inconsistent statements regarding his ability to work. AR 28-29 (citing AR 780 (October 2016: "currently unemployed in order to be available for his son.");[4] AR 799 (March 2017: "Unable to work due to mental health issues."); AR 1002 (March 2018: "Unable to work [due to son's] ongoing mental issues."); AR 816 (March 2019: "He said he needs a letter saying he has severe headaches and he can't work. Also he said he

[4] The ALJ appears to have mistakenly referred to a different record and the wrong month for this citation. *See* AR 28 (citing "C1D/47" as reflecting an April 2016 report).

can't work [because of] his son - he has to take care his son."); AR 819 (January 2019: "He said he is applying for disability because of his lower back pain and headache. He does not work. He takes care [of his 10 year old] son with special needs[.]"); AR 871 (February 2021: "When asked what type of work he feels capable of, he stated, 'Honestly I don't know… I am not getting any younger, so … I pretty much think I am going to retire … but, I don't know if I could retire.' He continued that it has been challenging with his son and he would prefer to be at home with him, keeping him safe.")). The ALJ found these statements indicated Plaintiff's "alleged inability to perform work activity is not entirely related to his impairments; rather, it is also attributable to taking care of his child and his age[,]" and that they tended to render his reports "somewhat less reliable." AR 29.

In assigning error, Plaintiff offers different interpretations of some of the testimony, statements, and evidence discussed by the ALJ. However, the fact the ALJ "*could* have come to a different conclusion" in interpreting the record does not suffice to demonstrate error. *Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2018). The ALJ here rationally interpreted the evidence.

Plaintiff also questions whether the ALJ properly considered some of the inconsistencies identified and their relevance. Contrary to Plaintiff's suggestion, there is no indication the ALJ improperly focused on Plaintiff's "overall character or truthfulness" in discussing the inconsistencies. Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *11 (explaining the ALJ does not focus on whether a claimant "is a truthful person[,]" and, rather, focuses on whether the evidence shows an impairment could reasonably be expected to produce the individual's symptoms and whether the intensity and persistence of the symptoms preclude work-related activities). The ALJ properly considered inconsistencies in Plaintiff's testimony

and statements as bearing on the weight the ALJ afforded his testimony as to the degree of his impairment. *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) ("An ALJ may consider inconsistent statements by a claimant in assessing her credibility."); *see also Ellis v. Bisignano*, No. 25-3688, 2026 WL 2322814, at *1 (9th Cir. Aug. 11, 2026) (ALJ may consider "inconsistent testimony about marijuana usage"); *Daly v. Bisignano*, No. 24-4888, 2025 WL 3187349, at *1 (9th Cir. Nov. 14, 2025) ("Internally contradictory testimony and inconsistent daily activities are well-established reasons for an ALJ to discount subjective symptom testimony."); *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("[A]n ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."); 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you.").

2. <u>Medical Evidence, Symptom Reporting, and Improvement</u>:

The ALJ also considered the medical evidence of record in assessing Plaintiff's symptom testimony. AR 25-28. As related to migraines, the ALJ found the record documented reports of ongoing symptoms despite treatment and supported the limitation to light work with additional restrictions regarding postural and environmental factors, but did not, as a whole, entirely support the frequency or severity of the headaches alleged and indicated some improvement with treatment. AR 25-27. He provided a detailed description of the medical evidence, including evidence of unremarkable or normal examination findings, and found that, "[a]lthough migraine headaches are often not associated with specific examination findings, the findings in the record

are not entirely consistent with his allegations." AR 26 (citations to record omitted). The ALJ also identified evidence of improvement and inconsistencies between evidence of Plaintiff's symptom reporting and his testimony as to both the frequency of his headaches and improvement of his symptoms with treatment. *See id.* (citations to record omitted).

Plaintiff assigns error to this assessment. He argues, for example, that the ALJ improperly relied on an absence of objective findings, and that the evidence of improvement "does not support the ALJ's RFC finding that excludes any off-task effect" of his headaches. Dkt. 12 at 13, 15-16 & Dkt. 17 at 2 (citing, *inter alia*, *Dalley v. Comm'r of Soc. Sec.*, No. C00-1687, 2006 WL 2578269, at *6 (N.D. Cal. Sept. 6, 2006) ("[M]igraine headaches cannot be evidenced by imaging studies, laboratory tests or other ordinary 'objective' evidence.")).

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *accord* 20 C.F.R. §§ 404.1529(c)(2), (4), 419.929(c)(2), (4); SSR 16-3p, 2017 WL 5180304, at *4-6. Inconsistent or contradictory medical evidence, evidence of improvement with treatment, and inconsistencies in symptom reporting and testimony are all valid reasons to discount a claimant's allegations of disabling limitations. *See, e.g., Smartt*, 53 F.4th at 497-99 ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony. We have upheld ALJ decisions that do just that in many cases."); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (ALJ properly considers inconsistencies in a claimant's reporting); *Burch v.*

*Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.1529(c)(4) (symptoms are determined to diminish capacity for basic work activities to the extent the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence."); SSR 16-3p, 2017 WL 5180304, at *6 (ALJ evaluates whether a claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with objective medical evidence and other evidence).

In this case, the ALJ did not rely solely on an absence of objective medical evidence in discounting Plaintiff's symptom testimony. The ALJ considered, *inter alia*, inconsistency with the medical evidence, evidence of improvement with treatment, and inconsistency in symptom reporting and testimony. Nor does Plaintiff identify error in relation to the evidence of improvement. The ALJ found Plaintiff's migraines to be a severe impairment, accounted for some degree of limitation in the RFC, and reasonably considered evidence of improvement with treatment as a basis for discounting Plaintiff's testimony as to the degree of his impairment.

3. <u>Activity Level</u>:

The ALJ found the record documented a level of activity that was not inconsistent with the RFC assessed. AR 29. He contrasted Plaintiff's allegation of daily headaches and pain limiting his physical activities with his reports of "going to the Y, walking, and taking field trips to try improving mood"; "that he did citizen patrol in his complex, attended appointments, cooked and ate regularly, and used public transportation"; "on a typical day, he cleaned up around the house but he needed breaks due to pain, worked on projects with his son for his son's toys, cared for a dog and cat, and played games with his son"; "performed personal care without

difficulty, prepared simple and complete meals, walked or used the bus for transportation, shopped as needed for himself and his son, and did housework for up to two hours daily but usually taking one or two breaks"; "was able to perform activities of daily living independently, consistently, effectively, and without difficulty"; and "cleaned up the house, cooked meals, went grocery shopp[ing], and spent time with his son[.]" AR 29 (citing 836, 873, 880, 952, 998). The ALJ also noted multiple references in the record to Plaintiff homeschooling his son, who has special needs, and, while acknowledging his testimony of his limited role, found the fact "he is able to successfully manage his son's activities and assist him is not entirely consistent with allegations of daily debilitating headaches." *Id.* (citing AR 836, 870, 1016, 1021).

An ALJ may consider inconsistencies between a claimant's testimony and evidence of his activities in discounting symptom testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). This is true even where a claimant's activities suggest some difficulty functioning. *See, e.g., Smart*, 53 F.4th at 499 (ALJ reasonably found claimant "was able to 'engage in a somewhat normal level of daily activity and interaction' despite her limitation[,]" including cooking, cleaning, caring for her child, doing laundry, grocery shopping with assistance, completing chores in short increments due to pain, and playing board games and doing crafts). Plaintiff does not identify and the Court does not find any error in the ALJ's consideration of his activities.

4. Symptom Exaggeration:

The ALJ, finally, found "other notable inconsistencies in the record." AR 29. First, consultative examiner Brendon Scholtz, Ph.D., opined Plaintiff's "self-report appeared to have 'marginal veracity,'" and "that he reported extreme psychological distress but described mild impairment and did not appear to be experiencing distress." *Id.* (quoting AR 954); *see also* AR

28. Second, consultative examiner Arnold Ronning, M.D., noted Plaintiff "reported pain severity out of proportion to the physical examination findings." *Id.* (citing AR 883). The ALJ therefore properly considered evidence of symptom exaggeration in discounting Plaintiff's testimony as to the degree of his impairment. *See Mackey v. Colvin*, No. 23-3620, 2025 WL 354517, at *2 (9th Cir. Jan. 31, 2025); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ, in sum, provided the necessary clear and convincing reasons for discounting Plaintiff's testimony.

**CONCLUSION**

For the reasons set forth above, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 14th day of October, 2026.

S. KATE VAUGHAN
United States Magistrate Judge